UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY ANN LANDI, *Also Known As Mary Ann Boyer* Plaintiff | ) ) ) ) | CIVIL ACTION NO. 4:22-CV-1125 |
| v. | ) ) ) | (ARBUCKLE, M.J.) |
| MAHONING TOWNSHIP, Defendant | ) ) ) | |

**MEMORANDUM OPINION**
*Township's Motion to Dismiss, Doc. 8*

## I.  INTRODUCTION

Mary Ann Landi ("Plaintiff") initiated this action alleging that Mahoning Township (the "Township") violated her constitutional rights when it declared that one unit in the multi-unit residential dwelling that she owns and lives in was unfit for occupancy. This "unfitness" was due to structural damage caused by a dilapidated concrete culvert located beneath the dwelling. Plaintiff asserts that deeming the unit unfit for occupancy amounts to an uncompensated physical taking of the unit.

This matter is before the undersigned Magistrate Judge upon consent of the parties. (Doc. 7). Pending before the Court is the Township's motion requesting that Plaintiff's complaint be dismissed. (Doc. 8). For the reasons explained herein, Defendant's motion will be granted and the complaint dismissed. However, Plaintiff will be granted leave to amend her complaint.

II.     **BACKGROUND & PROCEDURAL HISTORY**

To analyze Plaintiff's claims, we must first have a basic understanding of stormwater management in the Township, the Township's property maintenance codes, and the Township's ability to enforce those codes. After discussing these topics, we will summarize the events that led to part of a residential structure Plaintiff owns being declared unfit for occupancy.[1]

A.     STORMWATER MANAGEMENT IN THE TOWNSHIP

Plaintiff alleges that the Township is responsible for managing stormwater within its geographic boundaries. (Doc. 1, ¶ 13). To carry out this responsibility, the Township regulates activities that may affect stormwater runoff. Plaintiff alleges the Township's local ordinances impose volume and rate controls on stormwater discharge, and require that new development not increase the volume of stormwater discharged downstream. *Id.*[2]

Plaintiff alleges that the Township permitted upstream land development that directly or indirectly increased the stormwater runoff volume or runoff rate into a

---

[1] Throughout the complaint, Plaintiff alleges that her property was "condemned." Typically, a "condemnation" occurs when a municipality formally acquires title to real property. Based on the facts alleged in the complaint, the term "condemnation" is used in the sense that part of a multi-family residential building was declared unfit for occupancy until necessary repairs are made. Nothing in the complaint suggests that the Township initiated formal proceedings to acquire title to the residential structure or the land surrounding it.

[2] *See also Mahoning Twp., Pa. Code* §§ 202-13, and 202-14.

local stream called North Blizzards Run. (Doc. 1, ¶ 22). One such development project was construction of a municipal building at 849 Bloom Road, Danville, Pa 17821. (Doc. 1, ¶ 33). Plaintiff alleges that the Township failed to construct a catch basin to minimize the building's impact on stormwater runoff. (Doc. 1, ¶ 34). She alleges that the increased volume and/or discharge rate of stormwater into North Blizzards Run damaged a concrete culvert that runs directly below a portion of her home.

She also alleges that the Township made improvements on her property to stabilize Blizzards Run in the past, and was placed on notice in 2001 that her property required additional restoration.[3]

---

[3] In 1995, the Township made improvements to the embankment on Plaintiff's property to prevent North Blizzards Run from flooding. (Doc. 14, ¶ 14). In 2001, the Township's stormwater management infrastructure was evaluated by an engineer. (Doc. 1, ¶ 15). That engineer suggested several areas for stream bed restoration. *Id.* The portion of North Blizzards Run flowing through Plaintiff's property was a site suggested for stream bed restoration. *Id.* The Township did not implement any restoration techniques on Plaintiff's property. In or after 2021, the Township made improvements on private land south of Plaintiff's property to stabilize North Blizzards Run. (Doc. 1, ¶ 28).

### B. MAHONING TOWNSHIP PROPERTY MAINTENANCE CODES & CODE ENFORCEMENT

The Township adopted the 2012 International Property Maintenance Code (hereinafter "2012 IPMC") as its property maintenance code.[4] Under the 2012 IPMC, whenever a code official determines that there has been a violation, the official must serve notice to the person responsible.[5] That notice must:

(1) Be in writing;

(2) Include a description of the real estate sufficient for identification;

(3) Include a statement of the violation or violations and why the notice is being issued;

(4) Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of the code;

(5) Inform the property owner of the right to appeal; and

(6) Include a statement of the right to file a lien in accordance with Section 106.3.[6]

A person who fails to comply with a notice of violation "shall be deemed guilty of a misdemeanor or civil infraction as determined by the local municipality, and the violation shall be deemed a strict liability offense."[7] Moreover, if the responsible party does not comply with the notice of violation, the code official

---

[4] *Mahoning Twp., Pa. Code* § 171-1; *see also* 2012 IPMC § 106 *available at* https://codes.iccsafe.org/content/IPMC2012 (last visited 9/7/23).
[5] 2012 IPMC § 107.1.
[6] 2012 IPMC § 107.2.
[7] 2012 IPMC § 106.3; *see also Mahoning Twp., Pa. Code* § 171-2.

"shall institute the appropriate proceeding at law or in equity to restrain, correct or abate such violation, or to require the removal or termination of the unlawful occupancy of the structure in violation of the provisions of this code or of the order or direction made pursuant thereto."[8]

Dean VonBlohn ("VonBlohn") is the Township's zoning officer and property maintenance code administrator. (Doc. 1, ¶ 16).

### C.   PLAINTIFF'S PROPERTY

Plaintiff owns, and resides in, a multi-family dwelling located in the Township. (Doc. 1, ¶¶ 6-10). She resides in Unit #1, and leases Unit #2 and Unit #3 to tenants. *Id.* North Blizzards Run flows through a concrete culvert built under the westerly side of Unit #2. (Doc. 1, ¶¶ 11-12).

During the relevant period, Unit #2 was leased to a tenant. (Doc. 1, ¶ 9). Plaintiff was paid $1059.00 per month pursuant to a residential lease agreement. (Doc. 1, ¶ 17).

### D.   ALLEGED VIOLATION OF THE PROPERTY MAINTENANCE CODE

On July 23, 2020, VonBlohn issued a Notice of Violation due to the unsafe and deteriorated condition of the concrete culvert beneath Unit #2. (Doc. 1, ¶ 16).[9] This Notice of Violation was not provided to the Court.

---

[8] 2012 IPMC § 106.3.
[9] Plaintiff agrees that the concrete culvert is eroded, but denies that the erosion makes Unit #2 unsafe.

Plaintiff, apparently, did not bring the property into compliance with the Property Maintenance Code within the time provided.

On October 28, 2020, the Township commenced a civil action to enforce the code violations. (Doc. 1, ¶ 18). No copy of the complaint is in the record before this Court. Plaintiff alleges that she opposed this action in state court because the Township damaged her property and should be responsible for the repairs. (Doc. 1, ¶ 19).[10]

On March 5, 2021, VonBlohn issued a notice of condemnation, declaring that Unit #2 was unfit for occupancy because the condition of the concrete culvert compromises the structural integrity of that part of the dwelling. (Doc. 1, ¶ 24). On April 28, 2021, Plaintiff's tenant vacated Unit #2 because of the condemnation notice. (Doc. 1, ¶ 25). Plaintiff alleges she incurred $626.31 in costs to relocate her tenant. (Doc. 1, ¶ 26).

On April 29, 2021, the Township issued a notice to vacate letter ordering that Unit #2 be vacated and remain unoccupied. (Doc. 1, ¶ 27).

The current status of the state court actions associated with the enforcement of code violations or the condemnation of the property is unknown to this Court.

---

[10] Plaintiff attached a copy of her answer to the complaint to her brief in opposition. The Court has not considered that answer in resolving this motion.

    **E.**    **DISTRICT COURT PROCEEDINGS**

On July 19, 2022, Plaintiff initiated this action in federal court. (Doc. 1). In her complaint, Plaintiff alleges only one claim—that the Township violated her Fifth and Fourteenth Amendment rights. In her complaint, Plaintiff appears to assert two theories of liability. First she alleges that the Township condemned Unit #2 for the public purpose of promoting the health and welfare of current and former tenants. Second, she alleges that the Township condemned Unit #2, demanding that she repair what it damaged, instead of fulfilling its own stormwater management responsibilities. In both theories, Plaintiff alleges that the VonBlohn's condemnation notice amounts to the uncompensated physical taking of her property.

As relief, Plaintiff requests economic damages, compensatory damages, and attorney fees and costs.

On September 19, 2022, the Township filed a motion to dismiss Plaintiff's complaint. (Doc. 8). That motion is fully briefed and is ready to resolve. (Docs. 9, 14, 15).

**III.**    **LEGAL STANDARDS**

It is helpful to restate the familiar legal standard for resolving motions to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. We will also discuss the legal general standard for takings claims brought under the United States constitution.

### A.  MOTIONS TO DISMISS UNDER RULE 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to seek dismissal for failure to state a claim upon which relief can be granted. To assess the sufficiency of a complaint when dismissal is sought under Rule 12(b)(6), a court should: (1) take note of the elements a plaintiff must plead to state a claim; (2) identify mere conclusions which are not entitled to the assumption of truth; and (3) determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of a legal claim.[11]

In order for his or her allegations to be taken as true, a plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[12] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[13] Thus, courts "need not credit a claimant's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[14] The court also need not assume that a plaintiff can prove facts that he or she has not alleged.[15]

---

[11] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).
[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[14] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).
[15] *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.[17] This "presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'"[18] The plausibility determination is context-specific and does not impose a heightened pleading requirement.[19]

## B.     FIFTH AMENDMENT TAKINGS CLAUSE CLAIMS

The takings clause of the Fifth Amendment provides: "private property [shall not] be taken for public use, without just compensation."[20] This prohibition applies to state and local governments under the Fourteenth Amendment.[21] There is no requirement that a claimant exhaust state court remedies before bringing a Takings

---

[16] *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[17] *Jordan v. Fox Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

[18] *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted) (alternations in original).

[19] *Id.* at 347.

[20] U.S. Const. amend. V.

[21] *3909 Realty LLC v. City of Phila*, Civ. No. 21-0030, 2021 WL 2342929 at *5 (E.D. Pa. June 8, 2021) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001)).

Clause claim to federal court.[22] To state a takings claim, a plaintiff must allege facts that show a property interest was taken under color of state law without just compensation.

Federal courts have recognized two branches of takings clause cases; physical (*per se*) takings, and regulatory takings. A physical taking occurs where a government physically takes possession or occupies land or a structure.[23] In contrast, a regulatory taking occurs when the government "imposes regulations that restrict an owner's ability to use his [or her] own property."[24] The determination of whether a use restriction amounts to a regulatory taking is governed by a test developed by the Supreme Court in *Penn Central Transportation Co. v. City of New York*, "balancing factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action."[25]

The essential question to identifying whether a taking is physical (*per se*) or regulatory is not "whether the government action at issue comes garbed as a regulation (or statute, or ordinance, or miscellaneous decree). It is whether the government has physically taken property for itself or someone else—by whatever

---

[22] *Knick v. Twp. of Scott, Pa.*, 139 S.Ct. 2162, 2167 (2019).
[23] *Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063, 2071 (2021).
[24] *Id.*
[25] *Id.* at 2072 (citing *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).

means—or has instead restricted a property owner's ability to use his [or her] own property."[26]

This case involves a physical takings claim. A takings remedy is not available for every government invasion of private property. The line distinguishing a potential physical taking from a tort is drawn by a two-part inquiry. To qualify as a taking (1) the government must intend to invade a protected property interest, or the invasion must be the "direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action" and (2) the "invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owners right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value."[27]

---

[26] *Id*.
[27] *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1352 (Fed. Cir. 2003); *see also O'Shea v. City of Kingston*, No. 1:22-CV-666 (MAD/CFH), 2023 WL 4105492, at *4-5 (N.D.N.Y. June 21, 2023) (concluding that a city government's improper construction and maintenance of a road and sidewalk, which resulted in stormwater runoff damaging the foundation of the plaintiff's home was not a physical taking, but could be a tort); *Drake v. Vill. of Lima*, 530 F. Supp.3d 285, 291-92 (W.D.N.Y. 2021) (finding that a village's failure to maintain its sewer system, resulting in the plaintiff's basement being filled with four feet of raw sewage, may have been negligent but was not a physical taking); *Griffith v. Millcreek Twp.*, 215 A.3d 72 (Pa. Commw. Ct. 2019) (distinguishing between a "taking" under Pennsylvania's eminent domain statute and a tort); *Appeal of Jacobs*, 423 A.2d 442 (Pa. Commw. Ct. 1980) (finding that the Township's decision to issue upstream building permits, causing serious drainage issues for downstream properties, did not amount to a taking under Pennsylvania's Eminent Domain Law).

With these legal principles in mind we turn to the allegations and legal issues raised in this case.

## IV. DISCUSSION

The Township argues that Plaintiff's complaint should be dismissed because:

(1) Plaintiff did not plead a plausible regulatory takings claim under the *Penn Central* balancing test;

(2) Plaintiff did not allege facts to support a physical taking; and

(3) Even if a taking occurred, it was based on the Township's exercise of its police power and therefore the Township was not required to pay compensation.

Also, in its reply, the Township contends that Plaintiff attempts to assert a different takings claim in her brief than was pleaded in the complaint. It argues that she should not be permitted to proceed on the claim raised in her brief.

We will begin our analysis by addressing the threshold issue of whether Plaintiff is asserting a new claim in her brief. Then we will address whether Plaintiff has pleaded enough facts to show a "taking" occurred. Last, we will address whether Plaintiff will be given leave to amend, and will discuss the Township's request that these proceedings be stayed.

We need not address whether Unit #2 was taken based on the Township's exercise of its police powers because we conclude that Plaintiff has not pleaded enough facts to show a *physical* taking of Unit #2.

### A. PLAINTIFF IS NOT PERMITTED TO AMEND HER COMPLAINT IN HER BRIEF

In her brief, Plaintiff summarizes her physical takings claim as "the failure of Mahoning to enforce its own Stormwater Management Ordinance upon upstream developers and the Township's own development of a municipal building, which caused a physical intrusion upon Landi's property in the form of recurring flood waters." (Doc. 14, p. 15). In this claim, Plaintiff appears to allege that flooding occurred, and that flooding amounted to a "taking" of the flooded property. The complaint, however, does not include any allegation that Plaintiff's property was flooded. Rather, Plaintiff alleges that the amount of stormwater runoff passing through an underground culvert increased due to upstream development.[28] The allegations in Plaintiff's brief assert a different taking than the one pleaded in the complaint.

Under Count I of her complaint, Plaintiff alleges:

30. The Notice of Condemnation and Notice to Vacate deprived the Plaintiff of the use and enjoyment of her private land without just compensation.

---

[28] At least one Court has acknowledged that increasing stormwater runoff onto a plaintiff's property could theoretically form the basis of a taking. In *Ridge Line*, the construction of a post office increased stormwater discharge onto plaintiff's land by approximately 70%. 346 F.3d at 1358. Plaintiff filed an inverse condemnation action seeking reimbursement of the costs incurred to deal with the government's runoff, and reasonably projected costs to be incurred in the future. *Id.* at 1352. The U.S. Court of Federal Claims concluded that the invasion of the property was not exclusive and permanent, and thus was not a physical taking. On appeal, the U.S.

31. The Township's actions constitute an uncompensated taking of the Plaintiff's property by requiring her tenant to vacate and by ordering the Unit #2 remain unoccupied.

32. The taking of the Plaintiff's Property was for the alleged public purpose of promoting the health and welfare of tenants, both current and prospective, that seek to rent Plaintiff's allegedly unsafe property.

33. The excess stormwater that damaged the Concrete Culvert was caused, in part, by the Township's refusal to construct a catch basin in connection with its design and construction of its municipal building located at 849 Bloom Road, Danville, PA 17821.

34. The Township's refusal to construct said catch basin, which violated its own Stormwater Management Ordinance, directly benefitted the public by lowering the overall cost for the construction project, thus reducing the total expenditure of public funds.

35. The Township decided to take the Plaintiff's Property, rather than repair or expand the Concrete Culvert, for the public purpose of attempting to manage its stormwater.

36. The Plaintiff has suffered damages as a direct result of the condemnation of her property by the Township.

(Doc. 1, ¶¶ 30-36).

---

Court of Appeals for the Federal Circuit remanded the case because the Court below did not address Ridge Line's claim for inverse condemnation of a flowage easement, even though it was presented. *Id.* at 1358-59. On remand the parties reached a settlement and the case was voluntarily dismissed. Stipulation of Dismissal, *Ridge Line, Inc. v. United States*, No. 1:98-CV-00929 (Fed. Cl. July 18, 2007), ECF No. 127. To the extent Plaintiff is attempting to allege in her brief that the Township "took" an easement without providing just compensation, this claim is also not pleaded in the complaint.

The above-quoted passage appears to set out two separate claims alleging that the Township took Unit #2. First, Plaintiff claims that Unit #2 was taken for the public purpose of promoting the health and welfare of current or prospective tenants, because it was not safe. (Doc. 1, ¶¶ 30-32). Second, Plaintiff claims that Unit #2 was taken because the Township demanded Plaintiff pay to repair what the Township damaged due to its own failure to enforce the local stormwater management ordinance.[29] (Doc. 1, ¶¶ 33-36). Like the first claim, the language used in the second claim suggests that the condemnation, and not flooding, was the uncompensated taking. (Doc. 1, ¶ 36).

We agree with the Township that the "flooding" claim described in Plaintiff's brief was not pleaded in the complaint. It is inappropriate to amend a complaint in a brief in opposition to a motion to dismiss, and we will not permit Plaintiff to do so here.[30] Therefore, we will not consider the flooding claim Plaintiff describes in her brief. We will, however, grant Plaintiff leave to file an amended complaint.

---

[29] Although Plaintiff alleges the culvert is on her property, she also implies that it is the Township's responsibility to maintain that culvert. It is not clear whether she believes the Township is responsible for the culvert due to its obligation to manage stormwater, or because the Township damaged it, or for some other reason.

[30] *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

### B.    NO REGULATORY TAKINGS CLAIM IS PLEADED

Defendant construes the complaint as asserting a regulatory takings claim, and argues that the facts alleged do not state a plausible claim based on the *Penn Central* framework. (Doc. 9, pp. 9-17). Plaintiff responds that she is bringing only physical (*per se*) takings claims, and that *Penn Central* does not apply. (Doc. 14, pp. 13-15). The parties agree that there is no regulatory takings claim pleaded in the complaint.

### C.    UNIT #2 WAS NOT PHYSICALLY TAKEN

In her complaint, Plaintiff alleges two claims based on a theory that the Township's decision to declare one unit in a multi-family residential building unfit for occupancy amounts to a physical taking.

The United States District Court for the Northern District of New York addressed a similar takings claim in *O'Shea v. City of Kingston*.[31] In *O'Shea*, a plaintiff alleged that the city's improper construction and maintenance of the road, sidewalk, and curb fronting caused stormwater from nearby upland properties to flow onto his land. The flow of stormwater slowly eroded the foundation of a residential structure (used as a rental property).[32] Eventually, the structure was declared unfit for occupancy and could no longer be rented out.[33] Like in this case, the plaintiff in *O'Shea* argued that declaring his rental property unfit for occupancy

---

[31] *O'Shea*, 2023 WL 4105492.
[32] *Id.*
[33] *Id.*

was a physical taking.[34] In ruling on a motion to dismiss, the Court held that there was no *physical* taking where the City "merely determined that the property [was] uninhabitable, and [directed] Plaintiff to stop inhabiting it until he [made] the necessary repairs."[35]

Like in *O'Shea*, Plaintiff alleges that the Township took physical possession of Unit #2 by declaring it unfit for occupancy. Her complaint does not include facts that support a *physical* taking of Unit #2. Nothing suggests that the Township is physically occupying Unit #2, or that Unit #2 was flooded by stormwater. Declaring a residence unfit for occupancy, and directing the owner to keep it vacant until repairs are made, does not amount to a physical taking.

Accordingly, we find that Plaintiff's claims that Unit #2 was physically taken by the Township should be dismissed.

### D.   LEAVE TO AMEND & THE TOWNSHIP'S REQUEST FOR A STAY

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile.[36] In this case, permitting amendment is not futile, nor is there any basis to believe that amendment

---

[34] *Id.* at 5.
[35] *Id.* at 6.
[36] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

would be inequitable. Therefore, Plaintiff will be granted leave to file an amended complaint.

In its reply, Defendant requests that, should its motion be denied, this action be stayed until the state court proceedings are resolved. Defendant's request for a stay is denied without prejudice to renew this request at an appropriate time if an amended complaint is filed.

## V. CONCLUSION

For the reasons set forth above Defendant's motion (Doc. 8) is GRANTED as follows:

(1) Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE; and

(2) Plaintiff is granted leave to file an amended complaint on or before **October 24, 2023**.

In the event Plaintiff fails to amend her complaint by this deadline, the dismissal of her complaint will be converted to a dismissal WITH PREJUDICE, and the case will be marked as "closed" without further notice.

(3) An appropriate order will be issued.

Date: September 13, 2023                    BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge